809 So.2d 22 (2002)
ALAMAGAN CORPORATION, a Florida corporation and LaSalle Ventures One, Ltd., a Florida Limited Partnership, Appellants,
v.
The DANIELS GROUP, INC., a Florida corporation and Rona Daniels, an individual, Appellees.
Nos. 3D00-2317, 3D00-2331.
District Court of Appeal of Florida, Third District.
January 30, 2002.
*23 Rodriguez & Machado, P.A., and Albert J. Xiques, and Hilda Piloto, Miami, for appellants.
Sweetapple, Broeker & Varkas, and Paul B. Feltman, Miami, for appellees.
Before COPE, GERSTEN, and GREEN, JJ.
GREEN, J.
Appellants Alamagan Corporation ("Alamagan") and LaSalle Ventures One, Ltd. ("LaSalle"), appeal from two separate orders, in two separate cases regarding one piece of property. The first order was the granting of appellees' motion to extend a lis pendens on the property for one year, and the second was from an order denying the appellants' motion to dissolve that same lis pendens. Based on our review of the record and the unique set of facts in this case, we affirm.
Alamagan owned a parcel of real property commonly referred to as 1200 South Miami Avenue, Miami, Florida. Rona Daniels[1], a real estate broker, introduced various parties to the property through Edie Laquer of Tecton Realty Group, Inc. ("Tecton"). In 1997, Alamagan signed a contract to sell the property to Vestec Brickell Corp. ("Vestec").
Shortly thereafter, Bridges Properties, Inc. ("Bridges")[2], sued Vestec and its President in Miami Dade County Circuit Court seeking an award of the purchaser's rights of the sale contract of the property. LaSalle intervened in the case, seeking a determination that itto the exclusion of Bridges and Vestecwas entitled to purchase the property under the contract. The brokers, Daniels and Tecton also intervened claiming a right to a real estate commission on the sale of the property.
The complaint alleged that in March 1997, Alamagan had granted Laerte de Pontes, Bridges' President, an option to purchase the property at 1200 South Miami Avenue for $4,200,000. Thereafter, de Pontes, and the directors of Bridges worked on the development of a Brazilianstyle mixed use/residential building with approximately 2.25 acres of the land to be located at 1200 South Miami Avenue. Beginning in or around July 1997, the relationship between de Pontes and Rafael Diaz Balart, Bridges Vice President, became strained. Subsequently, Diaz Balart resigned as an officer and director of Bridges. On the following day, Diaz Balart formed and incorporated Vestec. On that same day, Diaz Balart, as President of Vestec, executed the July 30th contract for the purchase of the property. Alamagan was not informed and was unaware that Diaz Balart had resigned from Bridges, and was acting on behalf of Vestec. La-Salle, in its claim for intervention alleged that at all times relevant to this transaction, de Pontes was acting on behalf of LaSalle, and that de Pontes had attempted to usurp LaSalle's rights by incorporating Bridges, to acquire the contract.
As a result, the matter was litigated and ultimately heard by a special master. The *24 parties stipulated that the transcript of the proceedings would serve as the pleadings of the intervenors, and that the special master's report and recommendations were binding. The report found that La-Salle was entitled to purchase the real property, and that the brokers (Daniels and Tecton) were "entitled to a 6% commission from the buyer under the contract for sale in issue." Moreover, and pivotal to the issue before us here, the special master clearly stated that the final judgment in this case would operate as a lien against the property.[3]
LaSalle's President, Gaubriel Mairone, executed and assumed all of the obligations under the sales contract, including the brokerage fees. The sales contract was subsequently amended three times, each time the sales price increased until the final amended contract provided that:
[a]t Buyer's option, Buyer may purchase Seller's stock of the parent corporation owning 100% of the Stock of Seller ...
Thus, at the closing on June 17, 1999, LaSalle acquired the stock of Alamagan's parent corporation, Nutone. Thereafter, Mairone assumed the position of Alamagan's President.
Following the entry of the final judgment, Daniels sent several letters attempting to obtain information about when the closing would occur. No response was ever received. Daniels subsequently filed a motion with the court seeking to enforce the terms of the final judgment. In conjunction with the motion, Daniels also filed a Notice of Lis Pendens[4] which referred to and attached the final judgment. Appellants filed a motion to set the lis pendens aside, but never set the motion for hearing. Daniels also filed a notice of recording the final judgment. Three months after closing, and after Daniels had filed her motions, Tecton was paid its half of the real estate brokerage fees with no adjustment made for the increase of the sales price reflected in the amendments.
*25 Rather than pay Daniels her portion of the brokerage fee, Alamagan filed a complaint against Daniels with the Department of Business and Professional Regulation ("DBPR"). The complaint alleged that Daniels' lis pendens was illegally filed. Subsequently, Alamagan's President clarified its complaint in an letter to the DBPR stating:
I have received your letter dated September 21, 1999. I am sorry if I have been unclear. My complaint Does Not relate to a dispute about a real estate brokerage commission.
My complaint does relate to the illegal filing of a lis pendens against our land, in violation of Chapter 475.45(1)(j) of Florida Statute.
Daniels was forced to spend substantial sums of money in responding to the complaint. Following an administrative hearing, there was a finding of no probable cause, and the proceeding was dismissed in Daniels favor. No appeal was taken from that dismissal.
In January 2000, appellants filed a separate suit against Daniels alleging slander of title. At or about the same time, Daniels filed a motion, in the original case, seeking supplemental relief pursuant to Florida Statute 86.061,[5] and requested an order to show cause. An amended motion for supplemental relief was filed a year later.
The trial court granted Daniels motion for supplemental relief and also set the cause for calendar call. Three days before the calendar call, the appellants filed a motion to disqualify Daniels' counsel. That motion was denied and appellants sought certiorari review. In the interim, the trial court stayed the proceedings. This court denied appellants' petition for certiorari. LaSalle Ventures One, Ltd. etc. v. Rona Daniels, et al., 768 So.2d 459 (Fla. 3d DCA 2000).
During the period of stay, Daniels filed a motion to extend the lis pendens for one year. The motion was set for hearing July 20, 2000. At the close of business on July 19, 2000, appellants filed an "emergency motion to dissolve lis pendens or in the alternative require a posting of a bond." This motion attempted to "piggy back" Daniels' motion for an extension of the lis pendens. On July 20, the trial court refused to hear appellants' untimely motion stating "you can't file something yesterday and have it heard today." Following the hearing, the court extended Daniels' lis pendens and required appellants to reset the motion requiring Daniels to post a bond for another date. Appellants have appealed the trial court's one year extension of the lis pendens.
Appellants' emergency motion to dissolve the lis pendens was heard and subsequently denied by the trial court. This order, issued in the 2000 case provides in pertinent part that:
1. This Court takes notice of the fact that the lis pendens is filed in connection with Case No.: 97-18158CA(30), which is also pending in this Division, but which is currently stayed.
2. The lis pendens is filed in connection with the following described real property:

*26 The North 100 feet of Lots 1 and 2, in Block 89, of CITY OF MIAMI SOUTH, according to the Plat thereof, as recorded in Plat Book B, at Page 41, and the South 50 feet of Lots 1 and 2, and Lots 3, 4, 5, 6, 7, 8, 9, 21, 22 and 23, in Block 89, of SOUTH CITY OF MIAMI, according to the Plat thereof, as recorded in Plat Book B, at Page 41, both of the Public Records of Dade County, Florida.
The street address which is: 1200 South Miami Avenue, Miami, Florida.
3. Third Party Defendant herein, La-Salle Ventures One, Ltd., has previously moved to dissolve the subject lis pendens, in Case No.: 97-18158 CA (30) on August 6, 1999, but that motion was never set for hearing.
4. This Court has equity jurisdiction over these matters.
5. The property subject to the lis pendens is currently listed for sale, and counsel for the owner asserted that the owner seeks to dissolve the lis pendens so that there is not "open ended" claim against the property.
6. The amount of $300,000.00, held in escrow, should provide equitable and adequate protection to The Daniels Group and Rona Daniels for the amount asserted to be due plus interest, costs and attorney's fees.
7. The lis pendens shall remain in effect until the amount of $300,000.00 is escrowed in accordance herewith or until further order or Court; however, any party may record this Order to provide notice that the lis pendens is limited to $300,000.00.
It is therefore:
ORDERED AND ADJUDGED that the lis pendens in Case No.: 97-18158 CA (30) is limited to the maximum amount of Three Hundred Thousand Dollars ($300,000.00). In the event of sale of the subject property, the lis pendens shall be dissolved only upon payment of the sum of Three Hundred Thousand Dollars ($300,000.00) into an interest bearing escrow account maintained by Daniels' counsel or into the Registry of the Court. It is further;
ORDERED AND ADJUDGED that Plaintiff/Counter Defendant's Motion to Dissolve Lis Pendens be and the same is in all other respects DENIED.
This order was also appealed. The portion of appellants' original emergency motion, requiring the posting of a bond was never heard or decided. Both appeals have been consolidated, and are now before us.[6]
Appellants argue that the trial court erred as a matter of law in refusing to discharge the lis pendens or in the alternative in refusing to require that Daniels' post a bond for the extension of the lis pendens. We dispose of appellants' second complaint first.
An appellate court may not decide issues that were not ruled on by a trial court in the first instance. Sierra by Sierra v. Public Health Trust of Dade County, 661 So.2d 1296, 1298 (Fla. 3d DCA 1995). See also Chipola Nurseries, Inc. v. Div. of Admin., 335 So.2d 617, 619 (Fla. 1st DCA 1976) (question not ruled on by trial court would not be considered on appeal); Margolis v. Klein, 184 So.2d 205, 206 (Fla. 3d DCA 1966) (before trial court will be held in error, it must be presented with an opportunity to rule on the matter before it); Beaty v. Beaty, 177 So.2d 54, 57 (Fla. *27 2d DCA 1965) (appellate court will review only those questions timely presented and ruled upon in trial court). Here, the trial court's order granting the extension of the lis pendens specifically provided that "La Salle's motion for bond as a condition to extend shall be set for evid[entiary hearing]." Appellants, however, have never set this issue for hearing. Accordingly, since this issue was never considered by the trial court, it will not be reviewed by us here. Sierra, supra.
Appellants' other argument claims that Daniels' filing of a lis pendens, and the subsequent extension thereof, was contradictory to the express language contained in section 475.42(1)(j), Florida Statutes. This section specifically provides that:
(j) No broker or salesperson shall place, or cause to be placed, upon the public records of any county, any contract, assignment, deed, will, mortgage, affidavit, or other writing which purports to affect the title of, or encumber, any real property if the same is known to her or him to be false, void, or not authorized to be placed of record, or not executed in the form entitling it to be recorded, or the execution or recording whereof has not been authorized by the owner of the property, maliciously or for the purpose of collecting a commission, or to coerce the payment of money to the broker or salesperson or other person, or for any unlawful purpose. However, nothing in this paragraph shall be construed to prohibit a broker or a salesperson from recording a judgment rendered by a court of this state or to prohibit a broker from placing a lien on a property where expressly permitted by contractual agreement.
§ 475.42(1)(j), Fla. Stat. (1999). We disagree with appellants' analysis.
Appellants' argument relies on the cases of Lake Placid Holding Co. v. Paparone, 414 So.2d 564 (Fla. 2d DCA 1982), and Llera Realty, Inc. v. Board of Real Estate, 385 So.2d 1131 (Fla. 3d DCA 1980), for the proposition that pursuant to section 475.42, a real estate broker can not use a lis pendens to collect a real estate commission. These cases, however, were decided prior to the 1985 amendments to section 475.42, which added the final sentence permitting a broker to record a judgment. Ch. 85-101, § 1, Laws of Florida (1985). Moreover, in both Llera and Lake Placid the brokers had filed their lis pendens before the validity of their claims had been adjudicated.
Conversely, in this case, Daniels' right to brokers fees had been adjudicated, and a final judgment was entered in the brokers favor. Clearly, by clarifying, in 1985, that a broker can record a judgment the legislature was attempting to protect brokers from parties seeking to avoid the payment of real estate commissions after the broker had obtained a judgment.
In this case, allowing the recording of a judgment but not the filing of a lis pendens would be contradictory to the legislative intent of section 475.42. Subsequent to the final judgment, appellants amended the sales contract to allow LaSalle to take title to the property through a transfer of shares of stock. Accordingly, LaSalle's title to the property is not a matter of public record. Moreover, a potential purchaser would not be on notice of Daniels' claims by the recordation of a final judgment. This file already contains a satisfaction of judgment filed by the original plaintiff, Bridges, when it was paid by LaSalle. Thus, the potential for confusion in the record could easily result in confusion to a potential purchaser or lender. Recording of the lis pendens together with the final judgment was the only step that Daniels *28 could take to preserve the broker's rights pending judicial action on the motions to compel LaSalle's compliance with the final judgment.
A lis pendens serves the twofold purpose:
(1) to protect subsequent purchasers or encumbrancers of the subject property from becoming embroiled in the pending dispute over the property, and (2) to protect the plaintiff from intervening liens that could impair any property rights claims and also from possible extinguishment of the plaintiffs unrecorded equitable claim.
Acapulco Constr. Inc. v. Redavo Estates, Inc., 645 So.2d 182, 183 (Fla. 3d DCA 1994). See also Lennar Fla. Holdings, Inc. v. First Family Bank, 660 So.2d 1122 (Fla. 5th DCA 1995) (lis pendens exists as much to warn third parties of dispute as to protect plaintiffs interests).
In this case, the final judgment inextricably intertwines Daniels' right to a commission to the disposition of the property. The final judgment provided that the real estate brokers would be paid their commission upon the sale of the property. That sale was completed June 17, 1999. The commission was not paid to Daniels, in direct violation of the trial court's final judgment, and Daniels filed the notice of lis pendens approximately six weeks later. The trial court's extension of the lis pendens was necessary to protect Daniels' judgment because the property was listed for sale in the summer of 2000. Accordingly, given the fact that Daniels' claim was founded upon a final judgment on the property, we find that the lis pendens was proper.
Finally, as an equitable matter, upon appellant's concern that the lis pendens was "open ended," the trial court limited the lis pendens to $300,000. The court ordered that upon the sale of the property, that amount had to be placed in an interest bearing escrow account. Thus, in order to discharge or satisfy the lis pendens, all appellants need to do is pay the money, as ordered by the court. We find this portion of the trial court's order to be not only prudent but just.
Finding no merit in appellants other points on appeal, we affirm.
NOTES
[1] Appellees, Rona Daniels, individually and The Daniels Group, Inc. will collectively be referred to as "Daniels".
[2] Bridges was formerly known as Vestec Development, Inc.
[3] Specifically, during the proceedings the following colloquy took place:

MR. MACAULAY: We had previously discussed the issue of enforcement and those sorts of things.
* * *
THE SPECIAL MASTER: Sure. Absolutely.
MR. MACAULAY: I believe we have to provide this to Judge Esquiroz to sign, in any event.
THE SPECIAL MASTER: Yes.
* * *
MR. MACAULAY: Previously you had stated that your recommendation would be that this judgment would operate as a lien against the contract that they had.
THE SPECIAL MASTER: Well, the judgment
MR. MACAULAY:your recommendation in pointing that out to the Court. If we get into some kind of fight on collection, I would like to have your statement on that.
MR. SHERMAN: I don't think it could be any more, Judge, than what the law allows it to be. A judgment against the title holder of the property has a certain lien effect that is ahead of mortgages
THE SPECIAL MASTER: Let me explain. You can check the law on this. But if you have filed a judgment, the judgment constitutes a lien on any real property that's owned by the judgment debtor as of the date of its recordation. Now, obviously, the judgment debtor has an equitable interest if they're a purchaser under contract. They have some interest. But I don't want to deal with that particular problem.
[4] The terms "lis pendens" literally implies pending suit but is defined as jurisdiction, power, or control which courts acquire over property involved in a pending suit. Medical Facilities Dev., Inc. v. Little Arch Creek Props., Inc., 675 So.2d 915, 917 (Fla.1996). See also Marchand v. De Soto Mtg. Co., 149 So.2d 357(Fla. 2d DCA 1963) (lis pendens implies a pending action and is the jurisdiction, power, or control which courts acquire of property involved in action pending continuance of action and until final judgment therein).
[5] The section provides:

Further relief based on a declaratory judgment may be granted when necessary or proper. The application therefor shall be by motion to the court having jurisdiction to grant relief. If the application is sufficient, the court shall require any adverse party whose rights have been adjudicated by the declaratory judgment to show cause on reasonable notice, why further relief should not be granted forthwith.
§ 86.061, Fla. Stat. (1999).
[6] All matters between these parties in the trial court below have been stayed as a result of Alamagan's motion.