# Third District Court of Appeal

## State of Florida

Opinion filed July 30, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D13-2624 & 3D13-844
Lower Tribunal No. 10-2785

_____

**J. Milton Dadeland, LLC, etc.,**
Appellant,

vs.

**Abala, Inc., etc., et al.,**
Appellees.


Appeals from the Circuit Court for Miami-Dade County, Jacqueline Hogan Scola, Judge.

Robert P. Frankel & Associates, P.A., and Robert P. Frankel, for appellant.

Fowler White Burnett, P.A., and June Galkoski Hoffman, for appellees.


Before WELLS, LOGUE, and SCALES, JJ.

LOGUE, J.

J. Milton Dadeland, LLC appeals a final judgment that awarded Abala, Inc. a real estate commission of $1,470,000.00. We affirm.

## FACTS AND PROCEDURAL HISTORY

Colony RB-GEM, LLC ("the Owner") owned the property at issue in this case. In order to market the property, the Owner entered into commission agreement with a real estate agency, Abala, Inc. ("the Broker"). The commission agreement provided the Broker would be owed a commission of 6% if the property sold, and that the Broker "ha[d] the right to place a Lien on the property for the full amount of commission due."

Shortly afterwards, the Owner signed a contract to sell the property to certain entities who ultimately assigned the right to purchase to J. Milton Dadeland, LLC ("the Purchaser"). The sale was a short sale approved by the Owner's lender for the amount of $25,000,000. After the sale agreement was signed, but before the closing took place, the Broker recorded a lien for its commission in the public records. Upon learning of the lien, the Purchaser sued the Owner and the Owner's lender to remove the lien filed by the Broker. The parties settled that lawsuit. The Purchaser received a $500,000 reduction in the purchase price, and a $70,000 check at closing. The parties closed on the contract and a warranty deed transferring the property was executed which expressly acknowledged that the Broker claimed a lien for its commission.

2

After the closing, the Purchaser sued the Broker and other defendants essentially to cancel the lien. The Broker counterclaimed. Following a bench trial, the trial court entered judgment in favor of the Broker and the other defendants. This appeal followed.

## ANALYSIS

The Purchaser argues that the trial court erred in recognizing that the Broker has a lien on the property. It contends that the only lien for a real estate commission authorized by law is a lien on the proceeds of sale provided by the Florida Commercial Real Estate Sales Commission Lien Act, section 475.700, Florida Statutes (2009), et. seq. ("the Lien Act"). We disagree. We hold that the remedy of a lien against the proceeds of sale provided by the Lien Act is not exclusive.

The Lien Act provides that a real estate agent can obtain a lien for his or her commission on the "owner's net proceeds" from the sale of commercial real estate. § 475.703. The lien provided by the Lien Act, however, is only against the "owner's net proceeds," not the real estate that was sold:

> A broker has a lien upon the owner's net proceeds from the disposition of commercial real estate for any commission earned by the broker with respect to that disposition pursuant to a brokerage agreement. The lien upon the owner's net proceeds pursuant to this part for a broker's commission is a lien upon personal property, attaches to the owner's net proceeds only, and does not attach to any interest in real property.

3

§ 475.703(1). The Lien Act also sets forth a number of notices and disclosures that a broker must make to an owner before entering into a brokerage agreement that would permit such a lien. § 475.703(5).

The Purchaser argues that the requirements set forth in section 475.703(5) were not complied with here and therefore the Broker is not entitled to a lien. What the Purchaser's argument overlooks is that the Broker is not asserting a lien under the Lien Act. The premise of the Purchaser's argument is that the Lien Act is the sole remedy available to a broker. We reject this premise.

In the first place, nowhere does the Lien Act indicate that its remedy was intended to be exclusive. In fact, such an interpretation would lead to absurd results. The lien provided by the Lien Act attaches only to "the owner's net proceeds from the disposition of commercial real estate." § 475.703(1). In situations such as this, where there is a short sale, there are no net proceeds. A broker would be entitled to no meaningful security for its commission if we accepted the Purchaser's interpretation of the Lien Act.

Furthermore, Florida Statutes expressly provide that a broker may place a lien on real estate in certain circumstances. The Statutes provide that a broker may not place a lien on real property to collect a commission if the broker knows the lien to be false:

> A broker or sales associate may not place, or cause to be placed, upon the public records of any county, any . . . writing which purports to

affect the title of, or encumber, any real property if the same is known to her or him to be false, . . . for the purpose of collecting a commission, or to coerce the payment of money to the broker or sales associate or other person, or for any unlawful purpose.

§ 475.42(1)(j), Fla. Stat. (2009). The clear inference from such language is that the broker may place a lien on property if it is not false. In fact, the statute goes on and expressly says as much. The section specifically adds that a broker may place a lien on real property where expressly permitted by contract, stating that:

nothing in this paragraph shall be construed to prohibit a broker or a sales associate from recording a judgment rendered by a court of this state or to prohibit a broker from placing a lien on a property where expressly permitted by contractual agreement or otherwise allowed by law.

Id.

So, although the first sentence of section 475.42(1)(j) would preclude a broker from filing a false or unauthorized lien on property in order to collect a commission, the last sentence makes clear that a broker would not be prohibited from placing a lien on property to collect a commission that was permitted by contract. In fact, this court has noted that this last sentence was added to the Statute to allow a broker to file a lien to collect his or her commission. Almagan Corp. v. Daniels Group, Inc., 809 So. 2d 22, 27 (Fla. 3d DCA 2002) (distinguishing cases that "were decided prior to the 1985 amendments to section 475.42, which added the final sentence permitting a broker to record a judgment"); see also Michel v. Beau Rivage Beach Resort, Inc., 774 So. 2d 900, 902 (Fla. 4th DCA 2001) (noting

5

"the last sentence of section 475.42(1)(j) provides that the broker is not "prohibit[ed] . . . from placing a lien on a property where expressly permitted by contractual agreement").

Here, the commission agreement unambiguously entitles the Broker to a 6% commission on the gross contract sales price, and authorizes the Broker to place a lien on the property for the amount of that commission. As such, the lien is "permitted by contractual agreement," and is proper under section 475.42(1)(j). There is no question here whether the Purchaser was on notice of the lien: not only was the lien recorded in the public records, but the Purchaser litigated regarding the lien and obtained a reduction in the contract purchase price because of it.

## CONCLUSION

Because the Broker's lien was permitted under the commission agreement, the lien was proper under section 475.42(1)(j). The trial court correctly enforced the Broker's rights pursuant to the lien. We affirm the other points on appeal without discussion.

Affirmed.